IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ANDREW PATTON**,

    Plaintiff,                                                                No. 3:10-cv-01333-MO

             v.                                                      OPINION AND ORDER

**J.E. THOMAS, et al.**,

    Defendants.

**MOSMAN, J.**,

Andrew Patton, an inmate at FCI-Sheridan, brings this civil rights action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). All named defendants moved to dismiss [62], arguing plaintiff's Fourth Amended Complaint [59] fails under Fed. R. Civ. P. 12(b)(6). Plaintiff filed a motion for discovery [60] and a motion for summary judgment [72]. Defendants moved to stay briefing on plaintiff's motion for summary judgment [75]. I now grant defendants' motion to dismiss [62] and deny the other motions as moot.

## STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The court construes pro se pleadings "liberally," affording plaintiffs the "benefit of any doubt."  *Hebbe v. Plier*, 627 F.3d 338, 342 (9th Cir. 2010).

## DISCUSSION

### I.  Eighth Amendment Claim

Mr. Patton alleges that one named defendant, Officer Hiebenthal, called him derogatory names—including a "snitch"—on October 13, 2009, and September 7, 2010, and that other defendant officers took insufficient action in response.  (Fourth Am. Compl. [59] 4–5).  In my Opinion and Order of September 29, 2011, I addressed the prior version of plaintiff's complaint and explained that, in order to state an Eighth Amendment claim for this alleged misconduct under *Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989), Mr. Patton must allege that the name calling occurred in front of other inmates, Officer Hiebenthal intended to cause retaliation by other inmates, and plaintiff actually received threats of injury as a result.  (Opinion & Order [54] 2–3).  In response, Mr. Patton added the allegation that he was "harassed" by inmates and "[t]here were plenty of threats by inmates."  (Fourth Am. Compl. [59] 5).[1]  That conclusory allegation does not suffice.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  While Mr. Patton also added declarations from other inmates, they only bolster his allegation that verbal abuse occurred.  They do not state Mr. Patton was ever threatened or injured by other inmates.  Thus, while Mr. Patton alleged offensive and unprofessional conduct by Officer Hiebenthal, he has not stated an Eighth Amendment claim.

---

[1] He also alleges that a doctor at FCI-Sheridan can verify his claims, but does not explain why a doctor—but not Mr. Patton himself—might be able to identify threats Mr. Patton received.

## II.  First Amendment Retaliation Claim

Mr. Patton's Fourth Amended Complaint alleges defendants unlawfully retaliated against him for filing grievances and for seeking legal advice regarding those grievances.

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).  I will address in turn the different types of retaliatory conduct Mr. Patton alleges.[2]

### 1.  Initial Opening and Reading of Eight Letters

Mr. Patton alleges he attempted to send eight letters to attorneys for assistance on September 23, 2010.  (Fourth Am. Compl. [59] 6–7).  He alleges, without further detail, that they were "clearly marked as legal mail" and addressed to attorneys.  (*Id.* at 5).  However, Mr. Patton acknowledged that a ninth letter delivered the same day was addressed to a public defender, and that letter was mailed.  (*Id.* at Ex. C-3); *see Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (explaining that a district court ruling on a motion to dismiss may consider "exhibits attached to the complaint").  And he acknowledged that he used automatically generated labels for the eight letters, which failed to identify the recipients as "Attorneys at Law," as required by the prison mail policy.  (Fourth Am. Compl. [59] Ex. C-3) (Mr. Patton acknowledging that he failed "to write on the lable [sic] 'Atty at Law'"); (*Id.* at Ex. C–4) (response to Mr. Patton's grievances explaining undisputed prison policy that special handling rules apply only to outgoing mail that is marked as legal mail *and* includes a proper and adequately identified correspondent).

---

[2] I address the different types of alleged misconduct separately because different officers were allegedly involved in different conduct and because there are different, though overlapping, problems with Mr. Patton's allegations about different conduct.  However, I note that, for reasons discussed below, all misconduct Mr. Patton alleges with sufficient particularity fails to satisfy the fourth *Rhodes* element.

Nevertheless, he says the letters were opened because he filed grievances, presumably referring to his grievances arising out of the earlier incident with Officer Hiebenthal. (*Id*. at 6). Specifically, he alleges he gave the letters to Officer Burkholz and four days later saw Officer Blunk with them, who told him the letters were opened and read by himself and Officers Robinson, Kallunki, and Burkholz. Officers Robinson and Blunk then told Mr. Patton that the labeling had been improper.

Mr. Patton has not stated a claim based on this alleged conduct because he has not plausibly alleged the second and third elements identified above. He has not alleged that Officers Blunk, Robinson, or Burkholz knew of the incident with Officer Hiebenthal and does not explain how, before opening the letters, they could have known the letters concerned grievances arising out of that incident. And he does not dispute that the mail was improperly labeled or that these three defendants therefore had a non-retaliatory reason to open the letters. Nor has Mr. Patton adequately alleged that the officers' conduct "chilled the inmate's exercise of his First Amendment rights." *Rhodes*, 408 F.3d at 567. He nowhere alleges that his own willingness or ability to exercise First Amendment rights was hindered or diminished. He seems to argue that this element is satisfied because the officers' conduct would have chilled an ordinary inmate. (*See* Pl.'s Br. in Support of Mtn. for Summ. Judg. [73] 3). Plaintiff is correct that he may satisfy the fourth *Rhodes* element by alleging conduct that "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* at 568.[3] However, the opening and reading of one batch of mislabeled mail is not conduct that would chill or silence a person of ordinary firmness, especially since plaintiff acknowledges that one properly labeled letter was indeed mailed without any such intrusion.

---

[3] Additionally, allegations that the prisoner suffered harm as a result of the adverse state action can satisfy the fourth element "since harm that is more than minimal will almost always have a chilling effect." *Rhodes*, 408 F.3d at 567 n.11. However, Mr. Patton alleges no harm.

2.  *Refusal to Send Letters and Possible Destruction of Letters*

Mr. Patton next alleges Officer Robinson told him that Officer Kallunki refused to mail the eight letters because they involved grievances against Officer Hiebenthal and because Mr. Patton filed grievances against Officer Kallunki for opening and reading mail.  (Fourth Am. Compl. [59] 6–7).  He alleges that, several days later, Officer Burkholz said Officer Kallunki had refused to send the letters.  (*Id*. at 7).  He then alleges, without further detail, that Officers Kallunki, Robinson, Blunk, and Burkholz "confiscated and/or destroyed" the letters.  (*Id*.).  While this alleged misconduct is alarming if true, it too fails to satisfy the fourth *Rhodes* element.

An allegation that a prison official refused to send letters seeking legal advice concerning grievances, and then destroyed them, might generally satisfy the fourth *Rhodes* element for Rule 12(b)(6) purposes.  It is true that such conduct involves none of the more typical allegations of "chilling" behavior, such as explicit threats or physical harm to the inmate or the inmate's property, and does not impact the conditions or duration of confinement.  *See Rhodes*, 408 F.3d at 568 (retaliation claim stated based on alleged retaliatory confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliation claim stated based on retaliatory placement in administrative segregation for filing grievances); *Rizzo v. Dawson*, 778 F.2d 527, 530–32 (9th Cir. 1985) (retaliation claim stated based on retaliatory reassignment out of vocational class and transfer to a different prison).  It also leaves the possibility of future grievances and requests for legal advice open.  Nevertheless, an ordinary inmate could believe that future attempts at obtaining assistance would not see the light of day, and might therefore hesitate to make those requests or file grievances in the first place.

However, the allegations here include several important qualifications. Mr. Patton has not alleged, in the Ninth Circuit's words, that this alleged retaliatory misconduct "chilled the inmate's exercise of *his* First Amendment rights." *Rhodes*, 408 F.3d at 567 (emphasis added). While the alleged impact on Mr. Patton is not the controlling issue—since I must focus on an inmate of "ordinary firmness"—the lack of any such impact sheds some light on what an ordinary inmate would experience. Nor has he alleged that any other letter or batch of letters were ever mistreated or destroyed. Additionally, as discussed above, the eight letters were not labeled properly and plaintiff takes no issue with the handling of the one properly labeled letter.

An inmate of "ordinary firmness" who learned that one group of mislabeled letters were not mailed, and might have been destroyed, would not throw up his hands and conclude that, in the future, properly labeled letters seeking legal advice would not be sent, especially if one properly labeled piece of mail in the group was in fact mailed. The ordinary inmate would not, therefore, be deterred from sending such letters or filing grievances. *See Martin v. Loadholt*, 10-cv-00156-LJO-MJS, 2012 WL 525687, at *5 (E.D. Cal. Feb. 16, 2012) (allegation that officials required plaintiff to pick up daily medication at pill window failed to satisfy fourth *Rhodes* element); *Rowe v. Castro*, 07-cv-01150-GSA-PC, 2011 WL 2112466, at *7 (E.D. Cal. May 26, 2011) (allegation that officials improperly read and delayed delivery of confidential mail in retaliation for prisoner's prior grievances failed where it did not affect inmate's ability or willingness to pursue protected First Amendment activities). Accordingly, Mr. Patton has not stated a plausible retaliation claim based on this alleged misconduct.

   3. *Other Alleged Misconduct*

Mr. Patton also alleges Officers Robinson, Blunk, Burkholz, and Kallunki refused to provide him with postage to mail unidentified grievance forms and legal mail in October of 2010

and refused to sign his *in forma pauperis* papers for this lawsuit.  Lastly, he asserts that two

incident reports were written against him by unidentified individuals in July 2010, which resulted

in Mr. Patton being placed in solitary confinement.  Despite my previous instruction that Mr.

Patton flesh out these bare allegations, he has not done so.  As pled, they fail to meet any of the

*Rhodes* elements under the basic pleading standard.  There are still no allegations that the

unidentified incident reports from unidentified officials had anything to do with grievances Mr.

Patton filed.  And the other allegations treat all officers as one and do not identify when or how

any officer refused to provide Mr. Patton with postage or refused to sign his *in forma pauperis*

papers.

### III.  Leave to Amend

Leave to amend should be granted liberally.  *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th

Cir. 1987).  However, a court "may deny leave to amend due to . . . 'repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, [and] futility of amendment.'"  *Leadsinger, Inc. v. BMG Music

Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see

also Zucco Partners, LLC, v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (explaining

that where "the plaintiff has previously been granted leave to amend and has subsequently failed

to add the requisite particularity to its claims, the district court's discretion to deny leave to

amend is particularly broad") (quotation and alteration omitted).

Mr. Patton has now filed four versions of his complaint and had the benefit of my prior

opinion, which identified the elements he needed to allege and identified the same deficiencies

discussed above.  Yet his most recent complaint is substantively the same as the prior one.  I

conclude leave to amend would be futile and inappropriate under the circumstances.  *See*

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (dismissal with prejudice was proper "in light of [plaintiff's] repeated failure to cure the deficiencies in his pleadings").

## CONCLUSION

I GRANT defendants' motion to dismiss [62] because plaintiff's Fourth Amended Complaint fails under Fed. R. Civ. P. 12(b)(6) and dismiss this case with prejudice.  I therefore DENY as moot plaintiff's motion for discovery [60], plaintiff's motion for summary judgment [72], and defendants' motion for a stay [75].

IT IS SO ORDERED.

DATED this    17th    day of May, 2012.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court